(132 So. 168)

## REESE v. CLAYTON et al.
### 7 Div. 997.

Supreme Court of Alabama.
Jan. 22, 1931.

C. J. Scott and J. A. Johnson, both of Ft. Payne, for appellant.

J. V. Curtis and Haralson & Son, all of Ft. Payne, for appellee.

GARDNER, J.

Complainant is the administratrix of the estate of W. J. Rush, deceased, and filed this bill to remove the administration into the equity court and to acquire possession of notes and mortgages in the hands of respondent Vaughn, secretary of the Lookout Valley Infirmary, who held the same under a power of attorney executed by decedent one month before his death, and while he was a patient at said infirmary. The notes and mortgages were surrendered to the court and answers filed by defendants Vaughn and Dr. O. W. Clayton seeking collection of the amount due said infirmary and the doctors for services during the last sickness of said decedent. The answer was made a cross-bill, and Dr. B. M. Clayton and Miss Mary Love were made parties thereto as having an interest in these bills, and the cause proceeded to final decree upon proof by depositions as to the reasonableness of the charges as represented by the claims presented.

Decedent remained in the infirmary one hundred and ninety-five days. He was a paralytic at the time of his entrance therein, and had been for a period of twenty-five years, living previously with his sister. He had no wife or children and only collateral kin. No specific contract appears to have been made. Decedent was aged and incurable. There were no operations or special treatment of any character, and the doctors all agree that nothing could be done for him except to make him comfortable.

Defendant and cross-complainant Dr. O. W. Clayton owns a two-thirds interest in the infirmary, Miss Mary Love owning the remaining one-third, while Dr. B. M. Clayton has only an one-half interest in Dr. O. W. Clayton's bills.

During decedent's stay at the infirmary, there were of course other patients, though in no great number. Miss Love was the nurse in charge, and drew a salary from the infirmary. The hospital charges proper amounted to $702, as to which no criticism is directed, nor is there objection made to the laundry bill of $195. The items as to which special objection is interposed by the administratrix relate to the doctors' bill of $1,597.50, and special and extra nursing aggregating $1,230. As to this latter sum the account is divided into two parts as follows: "Extra nursing by nurses, forty-five days at $4.00 a day $180"; "special nursing for one hundred and fifty days at $7.00 per day, $1,050." But we think the proof well establishes the fact that there were no special nurses and no extra nurse. The nursing was practically all done by Miss Love, who at the same time looked after all other infirmary patients who did not have a special nurse. The two girls in training who were paid a mere nominal salary and board were at the infirmary only a short time after decedent's entrance. As noted, the extra nurses were charged for at the rate of $4 per day, and the special nurse at $7 per day—all represented in fact by the infirmary nurse and part owner, Miss Love.

We have previously commented on the fact that decedent's case was hopeless and nothing to do but make him comfortable. The secretary admits that other patients were not charged for special nursing who were thus looked after by Miss Love, but he says there is a "difference in patients." The difference in this case, as we read the evidence, was in the fact that decedent had lost control of the discharge from his bladder, and, in the last several weeks, of his bowels also, requiring more constant attention, and a change of clothes. The work was disagreeable, but common sense dictates that a trained and graduate nurse at $7 per day was not required for work of that character, but it called more for menial labor rather than so skilled and expensive assistance.

■ It may be conceded that a patient in such condition would be more trouble and require more attention than the average, but the proof should show what would be a reasonable charge over and above the usual charges for such extra work, but it cannot be made to rest upon the charge for "extra nurses" when there were none and for "special nursing" at $7 per day when there was no special nurse and no necessity shown therefor.

The doctor, owning the large interest in the infirmary and having other patients therein, charged for his services $1,597.50, which was credited with $435.90 due by him to decedent as evidenced by note. The bill was not itemized, and the testimony of the doctor was very vague and unsatisfactory as to what in fact was done for decedent to warrant so great a charge. In answer to questions by his counsel, he states: "We did all we could for him in his condition, * * * tried to make him comfortable." Two physicians of that community were placed on the stand to establish the reasonableness of the charge, but they declined to do so. True they did not condemn the charge in so many words, but a court looking to ascertain the truth may well understand and interpret this evidence as plainly so indicating. One of them stated, in reply to the question of reasonableness, that he charged $2 a visit when he called on a patient residing there in the town.

■ We think the proof fails to show the reasonableness of this charge. What is a proper sum to be paid for such services rendered, the number of calls upon the patient for which there existed a reasonable necessity for a physician's presence? The learned chancellor did not approve the bills as thus presented, but deducted about $1,000 therefrom, and in his decree fixed the entire charge at $2,700. But we cannot find ourselves in accord with this result. It leaves the amount ascertained too much in the speculative field, and his decree shows it includes services of a special nurse, when, as we have shown, no special nurse was in fact employed, but merely extra attention required to be given. We have indicated the rule by which a reasonable sum due is to be ascertained. We cannot approve the decree as rendered.

It results therefore that the decree will be here reversed, and the cause remanded to be further considered in accordance with the views herein expressed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.